May it please the Court, my name is Joseph Aliotto. I was appointed lead counsel on behalf of the cardholders, consumers, who are the plaintiffs and the appellants here. We are here on the basis of a Rule 12b6 motion. It is not with regard to the liability. The liability claim is price fixing under Section 1 of the Sherman Act among and between the various banks and the two systems of Visa and MasterCard. The issue that was raised is one of standing as to whether or not the consumer cardholder has standing under Illinois BRIC. And it was our position that the cardholder is the first payor and the only payor. And after the cardholder pays, then the cardholder's bank and the merchant's bank and the merchant split up what the cardholder pays. In connection with that, also as the plaintiff's bank and the merchant's bank and the merchant's split up what the cardholder pays. Kagan. Let me just follow up there. So I understand that you're saying that the cardholder pays. But you have disavowed, I think, any argument that the interchange fees that cause you injury and that you claim are unlawfully fixed simply raise the price of goods and services. Is that right? I'm not quite sure what the other one is. You don't understand what I'm saying? No, I do not, Your Honor. I'm trying to understand exactly how you say the cardholder pays the interchange fee. Because what I see is a cardholder paying price for a handbag, and somewhere in that, an interchange fee is deducted and distributed, but the cardholder fee has never billed anything called an interchange fee. But I see also in your brief, you're saying that you're not arguing that the interchange fees being priced high just raises the cost of goods generally. I'm trying to understand what the nature of the payment mechanism is that gives these people antitrust standing. Okay. The — if it pleases the Court, it's two things. One, I would say that we sent to Your Honors yesterday from my San Francisco office this Court's recent decision in the Amex case, which has a chart which really shows exactly what we're saying. But what we're doing here is we're taking the perspective from the cardholder. Now, the banks and Visa and MasterCard had set an interchange fee amount. They agreed not to disclose this to consumers. When the consumer pays, part of that payment is the interchange fee that was fixed. But you agree that the consumer never gets billed a particular item. There's never any surcharge that is denominated interchange fee, right? No. What I say about that is, is that they had an agreement not to disclose it, so that you're correct that the cardholder never sees it on their bill, but they pay it. So — but I don't understand exactly how it is that they pay that fee, because all they — unless you're saying that prices generally for goods go up because of the interchange fee. The interchange fee is included in the amount that is paid by the cardholder. Therefore, the cardholder is the first payer and the only payer, the only one who pays money. What you're saying is the market, the ability to raise the price of the good that the consumer is buying is sufficiently elastic so that 100 percent of that interchange fee that has been fixed is passed on to the consumer, and the price of the good is effectively raised by the amount of the interchange fee, right? So the consumer buys a pair of blue jeans for $100, and that includes $4 that wouldn't be there, but for the price-fixed interchange fee. Certainly, that is the way that it would happen, except for one thing, Your Honor, and that is that under Illinois BRIC, regardless of any of that, the issue is who pays the money. Who's the first one who pays the money? That's it. And whoever is the first one who pays the money, that's the one that has standing, period. That's Illinois BRIC. Your argument is based on the sequencing. You're saying because the consumer initiates the transaction, and it is only through the initiation that that $4 is then divvied up among the banks, the consumer is the first payee. Is that right? That is right, Your Honor, and here's the chart, if I might show it, that this court issued in the American Express case just two days ago. And you can see in this chart, well, I don't know if you can see it from here, but we sent it to the court, and you can see that the chart shows that the cardholder pays everything, and then everything is split up. Except for one thing. When you're dealing with a credit card, the consumer hasn't paid anything yet, right? He's just given a credit card. When he gets his bill, then he pays the bill. So in a way, the consumer is the last one in the chain to pay anything, isn't he? No, Your Honor, the first. The first thing that is done when they approve the credit card is that they approve whether or not that person has credit from which they can take the money plus interest, so that the one, the only one who pays the cash is the cardholder. If it's a debit card, then obviously it just takes it right out. But the point is, is that the only one, as pointed out in the graph by chart by this court, the only one who pays is the cardholder. Everyone else divides everything up afterwards. We also, there was one issue that we wanted to raise as well. We showed the court below, we gave them three charts. We gave them the visa chart, we gave them the government accounting office chart, and we gave them the Federal Reserve Bank. Did you move to amend your complaint to incorporate those charts? No, Your Honor. We enclosed those charts in response to the claim by the defendants that our position was not feasible, and we were showing that it was feasible. In the chart, it says that the issuer pays the interchange fee. Yes, the issuer pays the interchange fee from the money received, as the court can see, from the cardholder. Right, but it's not the consumer paying the interchange fee. It's the issuer paying the interchange fee. The issuer pays the interchange fee, but the consumer paid it first. Exactly. The consumer paid it, and then they took what the consumer paid, and then they split it up. Do you allege that the price of goods would go down overall if the interchange fee were set in some other fashion or another level? In my judgment, if the court is asking for my judgment, if it were disclosed to consumers- This has to do with what damages your clients can allege, right? Our clients can allege, under Illinois BRIC, the entire amount of the 2.5 to 3% that is agreed to by the banks. It's an unlawful price fix, and it's very clear, it's logical, and we know exactly what it is. And that is not only impact, but it's also the amount of damages, so it would include both, yes. You would submit evidence showing that the interchange fees have a material effect on the pricing of goods overall. I don't, it would not be necessary for us to do it. What would be necessary for us to show is that the price was fixed, that we paid it, that they took it, and they took what they charged, and we were the ones who paid it. If they had disclosed it to consumers, and if consumers knew it, then there would be a competition as to whether or not any such fee even would be charged, but to last by agreement and automatically and not disclosed. I have another question for you. So the card is given, and before the consumer can take away his pair of pants, electronic data flows, and it flows up to the acquiring bank, then to the issuing bank, then to, first to Visa and MasterCard, then to the issuing bank, then back, and only after that is the consumer's account, assuming a debit card, which I think is a stronger case for you, is it debited. But at that point, when the data has gone all up and back, the issuing and acquiring bank and the merchant, they've already netted out the charge among themselves. So in a way, you know, they've netted it out because they see the consumer has the credit or debit, and so the consumer, again, strikes me as coming up last. They've already done their book entries to credit each other for this fee. That's why they're letting the consumer take the pants away. They approve, perhaps, the credit, or if it's the debit, they take it right away immediately. But if the cardholder consumer does not pay, then nobody gets paid. Everybody's stiffed. All right. You saved three minutes for rebuttal. We'll go from the other side. Thank you. Good morning, Your Honors, and may it please the Court. My name is Boris Bershteyn, and I'm here for the defendants appellees. Let me go directly to some of the issues that Mr. Aliotta raised during his argument. Let me start first with the question about whether retail prices are being increased. That is categorically not the allegation that the plaintiffs make here. At Special Appendix page 25 and footnote 6, Judge Brody carefully erased the many, many places where plaintiffs unequivocally deny that that is their theory. We had, at first, entertained the possibility that that is their theory, although it's far from clear from the complaint. And plaintiffs responded by saying, no, no, that is absolutely not what we're arguing. And that's certainly not argued any place before this Court. Second, whether the cardholder pays first or last. So Mr. Aliotta just told you cardholder pays first. That is absolutely not what's alleged in the complaint, and there's nothing more devastating to plaintiffs' argument on the score than these charts that they would like to put in. They're just the most accessible materials right now. So I want to point the Court to them. These are embedded in the plaintiff's, in the blue brief, in the plaintiff's brief. So if we look at page 17, this chart, which is a chart by Visa, helpfully numbers all the steps. And the number, the last number in those steps, which is number eight, is cardholder pays issuer $100. That is the first and only payment made by a cardholder. And you will see from the sequence of events that that's the last step. The next chart, which is just overleaf on page 18 of plaintiff's brief, it's again embedded in plaintiff's brief. It's a chart prepared by the Government Accountability Office. It again numbers steps in a credit card transaction from A through F. The last step, step F, is cardholder paying issuer $100. That's again the last step in the transaction and the only payment made by the cardholder. So the, and these charts, frankly, simply represent in pictures what the descriptions of the payment system that are alleged in the complaint and are stated in many opinions of this court. Well, in the next one, cardholder uses the card to make the purchase. It doesn't say it pays the money. That's right, Your Honor. In fact, E is cardholder pays. Okay, the next one also supports what you're saying. And in truth, I should be perfectly candid. That chart by the Federal Reserve is simply a duplication of the second chart. It says so in the footnote underneath that chart. The, let me now go to American Express. The American Express, I was much surprised that plaintiffs chose to put in the American Express opinion by 28J letter yesterday. As you will see in our response, that opinion is devastating to plaintiffs' case. What this court held on Monday, and I'm simply reading from page 15 of the slip opinion. The amount of the merchant discount fee is determined in large part by the interchange fee. And here's the key clause. The interchange fee, which is paid by the acquirer to the issuer as a price for handling its transactions with the cardholder. That is precisely the logical inference from the facts about the operation of the card system, alleged in that case and alleged here. In short, what the cardholder pays in no way depends on the level of interchange fee. Certainly in no way that's alleged in this complaint. Let me just say one last thing, and then I'm happy to rest on my papers unless the court has any questions. And what I wanted to say is about the state law claim. So unless the court- That's what I was going to ask about. Thank you, Your Honor. Your Honor, what I wanted to say, again, unless the court has any questions, is that the argument that the plaintiffs make in the second half of their reply brief is certainly not appropriately made before this Court. And none of that argument is made in the opening brief before this Court. And therefore, this Court would be – it would be appropriate under this Court's decision, for example, in Gross v. Urel, simply to disregard the entirety of that argument, since that's classic sandbagging. However, I would be more than pleased to address it on the merits. I'm also pleased to address other procedural problems with that argument, including that it was not made before Judge Gleeson in the briefing for motions to dismiss, and therefore should certainly not be appropriately revived here. In any event, this Court need not delve into intricacies of California law in its application of the so-called AGC factors, because whatever those factors show, cardholders have not been alleged to suffer any injury of any kind. They're not direct purchasers. They're not indirect. Do you have Article III standing? Oh, goodness. Your Honor, we certainly have not argued that they don't have Article III standing. But looking at the charts and, you know, I just go back to these charts because they're so illustrative and they seem to be supported by the plaintiffs, so I can't really run away from them. If you look at the chart on page, again, turning to their brief, on page 17 and 18, those two charts, it's nice to juxtapose them together because they have a different interchange fee. So one has a slightly, one has a five cents higher interchange fee. So interchange fee on page 17 is $1.65. Interchange fee on page 18 is $1.70, and the consumer still pays the same thing. And so the premise that the cardholder is in any way affected by interchange fees is so directly refuted by what plaintiffs themselves allege that it's certainly arguable that they have no injury of any kind whatsoever. But they certainly don't have antitrust injury, which is a much higher bar. I'm sorry, Your Honor. Unless the court has any questions, I'm happy to rest. Thank you. We'll hear the rebuttal. May it please, may it please the court. If the cardholder doesn't pay, nobody pays. And the idea that counsel just said that the acquirer pays the issuing bank with what, from what, when? It does appear from your own charts that the cardholder actually pays last. And does that not impact the standing issue? The only money, Your Honor, that is paid is by the cardholder. The cardholder either replenishes what somebody may have anticipated, may have advanced. But the cardholder pays 100%. There is not one penny that is not paid by the cardholder. And these particular charts show exactly that. And the chart by this court, two days ago. About the difference between $1.65 and $1.70, the consumer still pays the same thing. Every amount, every part of any amount paid is paid by the consumer. Every amount is paid by the consumer. The argument is that somehow this hurts them. And if they're paying the same amount for the pair of blue jeans or for the handbag, where's the standing? Your Honor, if the court would be good enough to take the perspective from the cardholder and take the direct and exact language of Illinois BRIC. And it simply is this. If you're the one who pays, you're the one who has the lawsuit. Now Visa itself says obviously merchants don't pay the interchange fee because they don't pay anything. They only get paid. The money is paid by the consumer and then split up by its bank, split up by the merchant bank, and the remainder is given to the merchant. And the sequence may sometimes be one way or the other. But the bottom line is and always will be that the consumer pays the 100%. And under Illinois BRIC, the consumer is the victim. As a matter of fact, I'll just end with this. The lower court mentioned in the settlement document, he warned those merchants. And he said, first of all, you've got to be careful about going to a jury because a jury will think they're the victims, which they are. And he also says, you know, the interchange fee is a hidden tax on the consumer, which it is. Thank you very much, Your Honors. Thank you.